FILED
CLERK
10/31/2016 10:24 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JOE HAND PROMOTIONS, INC. and ZUFFA LLC
d/b/a Ultimate Fighting Championship,

                    Plaintiff,

        -against-

MICHAEL J. MAUPIN, individually and as an officer,
director, shareholder, and/or principal of South Beach
Saloon, Inc. d/b/a South Beach Saloon, and SOUTH
BEACH SALOON INC. d/b/a South Beach Saloon

                Defendant(s).
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
15-cv-06355 (ADS) (AKT)

**APPEARANCES:**

**Jekielek & Janis LLP**
*Attorneys for the Plaintiffs*
153 West 27th Street
Suite 204
New York, NY 10001
      By: John Damon Jekielek, Esq., Of Counsel

**Sulimani & Nahoum PC**
*Attorneys for the Defendants*
116 West 23rd Street
Suite 500
New York, NY 10011
      By: Natalie Sulimani, Esq., Of Counsel

**Law Office of Trevor Brandt McCann**
*Attorney for the Defendants*
1595 Sunnyvale Avenue #17
Walnut Creek, CA 94597
      By: Trevor B. McCann, Esq., Of Counsel

**SPATT, District Judge**.

      This case arises from allegations by the Plaintiffs Joe Hand Promotions, Inc. (the "Plaintiff

JHP") and Zuffa LLC d/b/a Ultimate Fighting Championship® (the "Plaintiff UFC") (collectively,

1

"the Plaintiffs"), that the Defendants, Michael J. Maupin ("Maupin") and South Beach Saloon Inc. d/b/a South Beach Saloon ("South Beach Saloon") (collectively, "the Defendants"), publicly exhibited a pay-per-view event without license or permission in violation of the Federal Communications Act, 47 U.S.C. §§ 553 and 605 ("Section 553" and "Section 605" or collectively "the FCA"), and the Copyright Act, 17 U.S.C. §§ 106 and 501. Before the Court is a motion by the Defendants pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiffs' claims made under the FCA. For the following reasons, the Defendants' motion is denied.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

The Plaintiff JHP commenced this action against the Defendants by filing a complaint on November 5, 2015. Five months later, on March 14, 2016, the Defendants filed an answer to the complaint. On April 1, 2016, the Plaintiffs filed an amended complaint (the First Amended Complaint, or "FAC") as a matter of right. *See* FED. R. CIV. P. 15(a)(1)(B) ("A party may amend its pleading as a matter of course within . . . 21 days after service of a responsive pleading . . . ."). The Plaintiff UFC was added to the action and the Plaintiffs added two causes of action under 17 U.S.C. §§ 106 and 501 for copyright infringement. Three days later, on April 4, 2016, the Defendants filed the instant partial motion to dismiss for failure to state a claim.

The Defendants argue that (1) the Plaintiffs have failed to state a claim under Sections 553 and 605, and that (2) the Court should dismiss those claims in the FAC with prejudice and deny the Plaintiffs further leave to amend. The Defendants do not seek dismissal of the Plaintiffs' claims made under 17 U.S.C. §§ 106 and 501.

In their response, the Plaintiffs argue that the provisions of 47 U.S.C. §§ 553 and 605 prohibit the Defendants' conduct, and, therefore, their first amended complaint is legally sufficient.

## B. The Alleged Facts from the FAC

As the Plaintiffs have filed an amended complaint as a matter of right, the FAC is now the operative complaint. *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal citations and quotations omitted). The following facts are drawn from the FAC and the Court accepts them as true for the purposes of the instant motion.

The Plaintiff UFC is a foreign limited liability company whose principal place of business is in Nevada. (FAC at ¶ 1). The Plaintiff UFC is allegedly the premier mixed-martial-arts company in the world. (*Id.* at ¶ 7). The Plaintiff UFC produces and promotes over twenty-five live television events each year. (*Id.*) Some of the live television events are carried on cable television, and others are exclusively available on a pay-per-view basis. (*Id.*) On August 3, 2013, the Plaintiff UFC televised one of their events, "UFC 163: Jose Aldo v. Korean Zombie" (the "Telecast"), exclusively via pay-per-view. (*Id.* at ¶ 9). The Telecast originated via satellite, and was subsequently retransmitted to cable and satellite television companies. (*Id.* at ¶ 10). The Plaintiff UFC owns the registered copyright to the Telecast and registered the work with the United States Copyright Office within the required timeframe. (*Id.*)

The Plaintiff JHP has had the exclusive domestic rights for distribution and licensing of UFC's pay-per-view events to non-residential establishments—such as bars—since 2001, and specifically had those rights for the Telecast. (*Id.* at ¶¶ 8, 10).

The Defendant South Beach Saloon operates the South Beach Saloon which is a bar in Smithtown, NY. (*Id.* at ¶ 3). The Defendant Maupin held the liquor license for South Beach

3

Saloon during the relevant period; was the sole officer, director, shareholder, member and/or principal of South Beach; and had supervised the activities at South Beach Saloon. (*Id.* at ¶ 4).

During the time of the Telecast, the Defendants had a commercial, public view television and internet account with Cablevision, a cable television and internet company serving New York. (*Id.* at ¶ 13). Cablevision commercial, public view accounts are for commercial establishments, such as bars and are blocked from accessing certain channels and programming, including pay-per-view events like the Telecast. (*Id.*)

Instead of contracting with the Plaintiff JHP to obtain a license to publicly exhibit the Telecast in a commercial establishment, the Defendants allegedly used a Roku Streaming Player ("Roku") to exhibit the Telecast. (*Id.* at ¶¶ 12, 14). The Roku streams video from the Internet and is capable of exhibiting the streamed content on a television screen. (*Id.* at ¶ 14). The Roku End User License Agreement in effect at the time stated that the Roku, and any content streamed through it, were for personal, non-commercial use only. (*Id.*) To stream UFC events, the Roku connects to the UFC website, where the Roku user must register for an account. (*Id.* at ¶ 15). The UFC TV website also states that it is for residential use only. (*Id.*)

The Plaintiffs allege that the Defendants received the Telecast without authorization; publicly exhibited the Telecast at the South Beach Saloon without license or permission; misappropriated the Plaintiffs' licensed exhibition of the Telecast; avoided paying the Plaintiffs; and did all of this for financial gain. (*Id.* at ¶¶ 17–19).

## II. DISCUSSION

### A. The Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of

the Plaintiffs. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

**B. Applicable Law**

47 U.S.C. § 553 (a)(1) states that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

47 U.S.C. § 605 in turn states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Both Section 553 and Section 605 permit any aggrieved party to bring suit against the violator in federal court. *See* 47 U.S.C. § 553(c)(1); 47 U.S.C. § 605(e)(3)(A). A "person aggrieved" is defined as "any person aggrieved by any violation of [Section 553](a)(1)," 47 U.S.C. § 553(c)(1), and "any person with proprietary rights in the intercepted communication . . . ." 47 U.S.C. § 605(d)(6).

"Whereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, Section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication." *J & J Sports Prods., Inc. v. La Ruleta, Inc.*, No. 11–CV–4422, 2012 WL 3764062, at *2 (E.D.N.Y. Aug. 7, 2012) (citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132–33 (2d Cir. 1996) ("*Sykes II*"), *adopted by,* No. 11–CV–4422, 2012 WL 3764515 (E.D.N.Y. Aug. 29, 2012); *see also J & J Sports Prods., Inc. v. Arhin*, No. 07–CV–2875, 2009 WL 1044500, at *4 (E.D.N.Y. Apr. 17, 2009).

"When television programming is transmitted or intercepted over both cable and satellite mediums, both Sections 553 and 605 apply." *J & J Sports Prods., Inc. v. Bambu Lounge Corp.*,

No. 11–CV–1053, 2012 WL 1565713, at *2 (E.D.N.Y. Mar. 30, 2012), *adopted by*, No. 11–CV–1053, 2012 WL 1565471 (E.D.N.Y. May 2, 2012); *see also Sykes II,* 75 F.3d at 130 (noting that Section 605 applies to "the interception of cable-borne, as well as over–the–air, pay television" where cable-borne transmissions originate as satellite transmissions); *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002).

The purpose of the statutes is to prevent the reception of cable and satellite service without paying for it. *See, e.g., TWC Cable Partners v. Cableworks, Inc.*, 966 F. Supp. 305, 308–09 (D.N.J. 1997) ("By its plain language, it is clear that [] [S]ection [553(a)] was specifically designed to regulate the theft of cable service. Indeed, its legislative history reinforces this conclusion by providing that § 553(a) is 'primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of cable service without paying for the service.' ") (quoting H.R. Rep. No. 98–934, at 84, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4721.)) The statutes are commonly used to hold bar owners liable for extending their cable/satellite purchases beyond their authorized limitations. *See, e.g.*, *Home Box Office, Inc. v. Corinth Motel, Inc.*, 647 F. Supp. 1186 (N.D. Miss. 1986) (motel owner split one cable signal into multiple rooms); *Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co.,* 217 F. Supp. 2d 466 (S.D.N.Y. 2002) (bar owner paid residential rate but exhibited a sporting event commercially in his bar).

**C. Application To The Facts**

The Defendants argue that "[Sections 553 and 605] do[] not prohibit the . . . receipt of the [Telecast] over the internet." (Def. Mem. of Law at 2). In contrast, the Plaintiffs argue that those sections specifically prohibit the Defendants' conduct. (Pl. Mem. of Law at 4). The Court agrees with the Plaintiffs for the reasons stated below.

The question presented is whether an initial broadcast (not a rebroadcast)—that was received over the internet without proper license or permission and publicly exhibited—violates Sections 553 and 605. It appears that no court in the Second Circuit has directly answered this question, and the parties have not cited any such decisions in their papers. However, Second Circuit courts *have* entered default judgments in cases where the defendant was alleged to have exhibted a communication that was intercepted over the internet in violation of Sections 553 and 605. *See*, *e.g.*, *Joe Hand Promotions, Inc. v. Duke Bazzel Tobacco & Lounge LLC*, No. 1:13-CV-300, 2014 WL 2711168, at *2 (N.D.N.Y. June 16, 2014) (holding that the defendants' default was "an admission of the use of an unauthorized device to intercept coded and scrambled internet transmissions"); *Zuffa, L.L.C. v. Pryce,* No. 8:12-CV-1584, 2013 WL 5310212, at *2 (N.D.N.Y. Sept. 20, 2013) (same).

Courts in other circuits have analyzed and answered this question, with varying results. *See Joe Hand Promotions Inc. v. Spain*, No. 15–CV–00152, 2016 WL 4158802, at *4 (D. Ariz. Aug. 5, 2016) (stating that the court was skeptical that those sections applied to streaming, and finding that, "[e]ven if sections 605 and 553 did extend to Internet streaming, there is no evidence of unauthorized signal reception or interception, nor is there evidence that the Program was used for an unauthorized purpose despite being shown at a non-residential venue"); *J & J Sports Prods., Inc. v. Vega*, No. 5:15–CV–5199, 2016 WL 4132290, at *4 (W.D. Ark. Aug. 2, 2016) (holding that it is irrelevant whether a signal was sent over the internet or through another medium, because the internet receives information via wire); *J & J Sports Prods., Inc. v. Tamayo*, No. 2:14–CV–01997, 2016 WL 2855126, at *4 (E.D. Cal. May 16, 2016) (finding that a question of fact remained as to whether defendant bar could be held liable where patrons streamed a broadcast from their laptops without license, but declining to reach the question of whether sections 553 and 605 applied

8

to the internet); *J & J Sports Prods., Inc. v. Jaschkowitz*, No. 5:14–CV–440, 2016 WL 2727015, at *4 (E.D. Ky. May 6, 2016) (holding karaoke bar defendants liable for violation of section 605 where the defendants streamed a fight onto a projection screen without a license); *J & J Sports Prods., Inc. v. Sandana*, No. 1:13–CV–842, 2014 WL 3689283, at *4 (E.D. Cal. July 23, 2014) (holding that a question of fact remained as to whether a bar could be held liable under section 553 or 605 where a bar publicly exhibited a licensed boxing event without a license and where it appeared that a patron had streamed the fight over the internet).

This Court agrees with the courts that have allowed plaintiffs to proceed under a theory of liability that contemplates interception of communications via the internet. First, the language of the statutes does not preclude communications sent via the internet. Various courts, including courts in the Second Circuit consider communication sent over the internet to be communication sent via wire, *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 309 (E.D.N.Y. 2005) ("Internet . . provides to users thereof the ability to send or receive wire or electronic communications") (quoting *In re DoubleClick Inc. Privacy Litig.,* 154 F. Supp. 2d 497, 508 (S.D.N.Y. 2001); *United States v. Napier*, 787 F.3d 333, 346–47 (6th Cir. 2015) (finding that electronic communications sent over the Internet "were transmitted through interstate wires"), and both statutes prohibit interception of information that was sent via wire.

Furthermore, this interpretation is in line with the purpose of the statute—to prevent theft of cable and satellite programming. *See Zuffa, LLC v. Justin.tv, Inc.*, 838 F. Supp. 2d 1102, 1106 (D. Nev. 2012) (quoting *TWC Cable Partners*, 966 F. Supp at 308–09); *Sioux Falls Cable Television v. State of S.D.,* 838 F.2d 249, 259 (8th Cir. 1988) (McMillian, J., *dissenting*) ("Congress in § 605(a) has expressly prohibited the unauthorized reception of cable television programming. An individual or entity, no matter how laudable the motives, may not receive or

9

retransmit cable services without authorization unless the receipt of the services comes within the private viewing exception of 605(b)."); *California Satellite Sys. v. Seimon,* 767 F.2d 1364, 1366 (9th Cir. 1985) ("Enacted in 1934, section 605 was aimed at preventing the unauthorized use of radio signals by those authorized to transmit these signals as well as those not involved in authorized transmission.").

The Plaintiffs here have alleged that the Defendants circumvented their licensing structure by streaming the Telecast from the UFC's website and paying a residential rate instead of a commercial one, thereby illegally intercepting and exhibiting the Telecast. The Defendants allegedly did this using internet access provided by their cable provider. Courts have found that commercial defendants could be liable where they only paid the residential rate for a pay-per-view program. *See*, *e.g.*, *Garden City Boxing Club, Inc. v. Polanco*, No. 05–CV–3411, 2006 WL 305458, at *3 (S.D.N.Y. Feb. 7, 2006), *aff'd*, 228 F. App'x 29 (2d Cir. 2007) (entering judgment against the defendants after trial where the court found that defendants either used a black box to descramble the cable signal or spliced the cable from a residential account); *Nat'l Satellite Sports*, 217 F. Supp. 2d 466 (denying a motion to dismiss where the bar owner paid residential rate and exhibited a sporting event commercially in his bar); *J & J Sports Prods. v. Coyne*, 857 F. Supp. 2d 909, 917 (N.D. Cal. 2012) (granting summary judgment to the plaintiff where a bar purchased a pay-per-view boxing event and only paid the residential price); *DIRECTV, Inc. v. Ferri,* No. 08–CV–122, 2009 WL 4406052 (W.D.N.C. Nov. 25, 2009) (holding that a bar owner authorized to receive satellite transmissions for residential use was liable under § 605(a) for exhibiting the satellite transmissions at his bar for commercial benefit); *J & J Sports Prods., Inc. v. Phelan*, No. 5:08–CV–00486, 2009 WL 3748107, at *7 (E.D. Cal. Nov. 5, 2009) (finding that issues of material fact still existed as to whether a bar could be held liable where it paid the residential rate for a pay-

per-view boxing match); *DIRECTV, Inc. v. Walls,* No. 2:08–CV–605, 2009 WL 2255289 (S.D. Ohio July 27, 2009) (holding that defendant bar owner who falsely registered for a residential subscription was liable under Section 605(a)); *J & J Sports Prods., Inc. v. Rezdndiz*, No. 08–CV–4121, 2008 WL 5211288, at *3 (N.D. Ill. Dec. 9, 2008) (denying a motion to dismiss where plaintiff alleged that the commercial defendant publicly exhibited a pay-per view boxing event using a residential cable receiver without authorization). Therefore, the Defendants' ultimate action of exhibiting a pay-per-view telecast without proper license here has been held by courts to violate Sections 553 and 605.

Finally, the FCA is a strict liability statute, and courts have held defendants liable even where the public exhibition was not shown via cable. *See, e.g.*, *J & J Sports Prods, Inc. v. Orellana*, No. H:11–CV–0574, 2012 WL 3155728, at *4 (S.D. Tex. Aug. 2, 2012) ("Any unauthorized showing of the Event is a violation[.]"; "The FCA is a strict liability statute, so a plaintiff, as exclusive licensee, need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization."); *Nat'l Satellite Sports, Inc. v. Garcia*, No. 3:01–CV–1799D, 2003 WL 21448375, at *1 n.2 (N.D. Tex. June 18, 2003) ("A tape-delayed broadcast without authorization is still a violation of the FCA."); *J & J Sports Prods., Inc. v. Mosqueda*, No. 12–CV–0523, 2013 WL 2558516, at *2-*3 (D. Ariz. June 11, 2013) (same); *That's Entm't, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993).

In support of the instant motion, the Defendants cite four cases that they state stand for the proposition that communications received over the internet cannot serve as a basis for liability under the FCA. The Defendants also cite to a previous decision from this Court. The Court finds that the four cases are distinguishable, and that this Court's previous decision only serves to bolster its current one.

This case is dissimilar from *Zuffa, LLC v. Justin.tv, Inc.*, 838 F. Supp. 2d 1102 (D. Nev. 2012), because in that case the defendants were not alleged to have "intercepted . . . [a] broadcast from a [] cable operator over cable infrastructure. . . Rather, [the plaintiff] allege[d] that [the defendant] received a cable or satellite broadcast (without allegations to the legality of the reception) and then sent a digital copy of that broadcast by internet video stream . . . for general public availability." 838 F. Supp. 2d at 1007. Here, the Plaintiffs allege that the Defendants did illegally receive the Telecast over Cablevision's infrastructure. (FAC at ¶ 13). Namely, the Plaintiffs allege that the Defendants obtained the Telecast by accessing the Plaintiff UFC's website over the internet provided by the Defendants' cable provider and streamed the event using a Roku. (*Id.* at ¶¶ 13, 14, 17). This is not an instance where the Defendants copied a broadcast; they intercepted the original signal from the Plaintiff UFC's website using cable internet.

For the same reasons, this case is also distinguishable from *Ark Promotions, Inc. v Justin.tv, Inc.*, 904 F. Supp. 2d 541 (W.D.N.C. 2012) ("Plaintiff has not identified any authority supporting a finding that receipt of a *retransmission* of a communication by computer or the internet creates liability under the Communications Act.") (emphasis added).

As stated above, the court disagrees with the skepticism that is expressed by the court in *Joe Hand Promotions, Inc. v. Cusi*, No. 3:13–CV–935, 2014 WL 1921760, at *3 n. 4 (S.D. Cal. May 14, 2014) (stating in dicta that it was skeptical that feeds received over the internet from a third party violate Sections 553 or 605). Moreover, that court never decided whether internet streaming provided a basis for alleging violations of the FCA. The court granted summary judgment because the plaintiffs "failed to produce any evidence tending to demonstrate the type of internet used by the Defendants" and discovery was closed *Id.* at 3.

Finally, the Court cannot follow the logic of the court in *Zuffa LLC v. Kamranian*, No. 1:11–CV–036, 2013 WL 1196632, at *4 (D.N.D. Mar. 25, 2013), because the Second Circuit has rejected the reasoning employed by that court. In *Kamranian*, the Court held that the sections of 605(a) that apply to radio communications do not also apply to wire communications that originated as satellite. Id. at 4. In *Sykes II*, the Second Circuit held that those sections *do* apply to wire communications that originated as satellite, 75 F.3d at 133, and therefore this Court is constrained from following the decision of the court in Kamranian.

The Defendants also cite dicta from this Court's decision in *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452 (E.D.N.Y. 2012) (Spatt, J.). Specifically, the Defendants state that the Court "appeared to agree with the conclusions in the above-cited cases: 'To the extent discovery reveals that the technology utilized by the Defendants did not involve the transmission of the original signal, or was more akin to copying content, the Communications Act may not be applicable.' " (Def. Mem. of Law at 3) (quoting *Dish Network*, 893 F. Supp. 2d at 473. The portion of the *Dish Network* decision cited by the Defendants is inapplicable in this case because as mentioned above, the Plaintiff alleges that the Defendants intercepted the original signal. This Court's decision in *Dish Network* is consistent with the current one in both cases the Court allowed the Plaintiffs to proceed under 605(a) on the theory that the Defendants used individual accounts for financial gain. *Id.* Furthermore, the Court in *Dish Network* cited to numerous cases that also support the Court's current decision. *See*, e.g., *Joe Hand Promotions, Inc. v. That Place, LLC,* No. 11–CV–931, 2012 WL 2525653, at *3 (E.D. Wis. June 29, 2012) ("[T]he first and third sentences of § 605(a) . . . simply proscribe the unauthorized divulgence or use of communications which have been 'received' legally for certain purposes."); *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.,* No. 07–CV–3850, 2009 WL 1886124, at *7 (E.D. Pa. June 30, 2009) (holding that section

605(a) prohibits "divulging transmission of a satellite communication to unauthorized persons, even after lawfully receiving the communication"); *Kingvision Pay Per View, Ltd. v. Williams,* 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998) ("While [the defendant] may not have illegally intercepted the satellite signal, she was not authorized to display it to her establishment's patrons."); *That's Entertainment v. Old Bridge Tavern,* No. 94–CV–2612, 1996 WL 148045, at *2 (N.D.Ill. March 28, 1996) ("Even if there was no circumstantial evidence that Old Bridge intercepted the signal, there is direct evidence that defendant broadcast the transmission which is enough to violate the statute."); *That's Entertainment,* 843 F. Supp. at 999 ("While defendants are correct in pointing out that the second sentence of Section 705(a) of the Act requires both an unauthorized 'interception' and a divulgence of a cable television transmission in order to establish liability under the Act . . . the first and third sentences of Section 705(a) do not similarly require an 'interception' of a cable transmission and clearly proscribe the unauthorized divulgence or use of communications which have been 'received' legally for certain purposes.").

Accordingly, the Court finds that the type of interception and exhibition at issue here can provide a basis for liability under the FCA, and that the Plaintiff has alleged facts that plausibly allege that the Defendants violated Sections 553 and 605.

### III. CONCLUSION

Based on the foregoing, the Defendants' partial motion to dismiss the Plaintiffs' claims made under the FCA is denied in all respects. The matter is respectfully referred to Magistrate Judge A. Kathleen Tomlinson for the remainder of discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York

October 31, 2016

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge