**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
JOE HAND PROMOTIONS, INC., *407 E. Pennsylvania Blvd., Feasterville, PA 19053*, ZUFFA, LLC *doing business as Ultimate Fighting Championship*,

                        Plaintiffs,

           -against-

MICHAEL J. MAUPIN, *individually, and as an officer, director, shareholder and/or principal of South Beach Saloon Inc. d/b/a South Beach Saloon*, SOUTH BEACH SALOON INC. *28 Terry Road, Smithtown, NY 11787 doing business as South Beach Saloon*,

                        Defendant.
-----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:15-cv-06355 (ADS)(AKT)

## APPEARANCES:

**Jekielek & Janis LLP**
*Attorneys for the Plaintiffs*
153 West 27th Street
Suite 204
New York, NY 10001
       By:    Jon Damon Jekielek, Esq.,
               Ryan R. Janis, Esq., Of Counsel

**Sulimani & Nahoum PC**
*Co-Counsel for the Defendants*
116 West 23rd Street
Suite 500
New York, NY 10011
       By:    Natalie Sulimani, Esq., Of Counsel

**Law Office of Trevor Brandt McCann**
*Co-Counsel for the Defendants*
1595 Sunnyvale Ave #17
Walnut Creek, CA 94597
       By:    Trevor Brandt McCann, Esq., Of Counsel

**SPATT, District Judge**:

This case arises from allegations by the Plaintiffs Joe Hand Promotions, Inc. ("JHP") and Zuffa LLC d/b/a Ultimate Fighting Championship® (the "UFC") (collectively, "the Plaintiffs"), that the Defendants, Michael J. Maupin ("Maupin") and South Beach Saloon Inc. d/b/a South Beach Saloon ("South Beach Saloon") (collectively, "the Defendants"), publicly exhibited a Pay-Per-View event without license or permission in violation of the Federal Communications Act, 47 U.S.C. §§ 553 and 605 ("Section 553" and "Section 605" or collectively the "Communications Act"), and the Copyright Act, 17 U.S.C. §§ 106 and 501.

Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56. At the outset, the Court notes that while the Defendants filed a notice of motion for summary judgment, they conceded liability in their memorandum of law, and dedicated their entire memorandum to the issue of damages.

For the following reasons, the Plaintiffs' motion for summary judgment on liability is granted, and they are awarded $6,000 in damages. The Defendants do not dispute their liability. Accordingly their motion for summary judgment is denied.

## I. BACKGROUND

### A. The Relevant Facts

UFC promotes mixed martial arts fights. It is the world's most popular mixed martial arts organization. UFC fights are broadcast on television, either on networks or on Pay-Per-View. JHP distributes and licenses Pay-Per-View sports programs to commercial locations such as bars and restaurants. JHP has been the exclusive commercial distributor of UFC Pay-Per-View events since 2001. Commercial establishments pay JHP a licensing fee for Pay-Per-View programs based on their occupancy.

UFC's website provides information and instructions for owners of commercial establishments to legally show UFC Pay-Per-View events, and includes a link to JHP's website.

Cable and satellite television providers scramble, restrict, or block commercial customer accounts and equipment from ordering or receiving Pay-Per-View programs. In order to access the Pay-Per-View event, the commercial location must pay commercial licensing fees to JHP. JHP then notifies the commercial establishment's cable or satellite provider to unlock the Pay-Per-View event.

On August 21, 2013, UFC hosted Ultimate Fighting Championship® 163: Aldo v. Korean Zombie (the "Program"). The Program was broadcasted via satellite uplink from the live event in Rio De Janeiro, Brazil, and then transmitted to cable, satellite and digital television providers for distribution. It was available solely on Pay-Per-View. Residential customers paid $59.99 to view the Program. Commercial establishments had to obtain a commercial license from JHP to exhibit the Program. 144 commercial locations paid JHP for the right to legally exhibit the Program.

UFC owns the copyright to the audiovisual television broadcast of the Program and registered it with the United States Copyright Office within three months of its publication. JHP held the exclusive commercial distribution rights for the Program. Prior to the start of the Program, a "Piracy Notice" and "Copyright Warning" were each broadcast to viewers.

The Defendants own and operate the South Beach Saloon (the "Establishment"). During the relevant time, the Establishment had a commercial cable television account with Cablevision. The Establishment's Cablevision account was blocked from accessing the Program. The Defendants' service agreement with Cablevision stated "Pay Per View services are not available to commercial customers." (Pls.' 56.1 ¶ 19 (internal citation omitted)). In order to legally exhibit the Program, the Establishment would have had to pay $900 to JHP for a commercial license. The

Defendants never paid the commercial licensing fee, and JHP never notified Cablevision to unblock the Program on the Establishment's Cablevision account. JHP did not authorize the Defendants to exhibit the Program.

At some point, Maupin purchased a Roku Streaming Device (the "Roku"). The Roku connects a television to the Internet and allows users to stream available Internet content.

The Roku User Agreement states that it is "intended for personal, non-commercial use only. You may not use [the Roku] for any commercial or illegal purpose." (*Id.* ¶ 26 (quoting Roku End User Agreement, Pls.' Ex. B(8) to Janis Decl.)).

UFC.tv is a website that provides personal users with access to UFC programming. The Program was available for personal users on UFC.tv. The terms and conditions on the UFC.tv website restrict use to "residential, non-commercial use only." (*Id.* ¶ 27 (internal citation and quotation mark omitted)).

Maupin used the Roku to access the UFC.tv website. Using the Roku, he broadcast the Program to patrons of the Establishment. On the night in question, the Establishment was open to the public, and food and alcoholic beverages were available for purchase. The Establishment did not charge a premium for food or drinks, nor did it charge a cover.

The Establishment advertised on its Facebook page that it would be exhibiting the Program. The Establishment's exhibition of the Program was documented by a private investigator. The investigator opined that the Establishment could hold fifty individuals, and that at three different points throughout the night in question, he counted seven people at the Establishment.

On August 22, 2013, the Plaintiffs' attorney sent a letter to the Defendants notifying them of the Defendants' alleged violations of the Copyright Act and the Communications Act.

## B. The Relevant Procedural History

The Plaintiff JHP commenced this action against the Defendants by filing a complaint on November 5, 2015.

Five months later, on March 14, 2016, the Defendants filed an answer to the complaint.

On April 1, 2016, the Plaintiffs filed an amended complaint (the First Amended Complaint, or "FAC") as a matter of right. *See* FED. R. CIV. P. 15(a)(1)(B) ("A party may amend its pleading as a matter of course within . . . 21 days after service of a responsive pleading . . . ."). The Plaintiff UFC was added to the action. The amended complaint alleged violations of the Communications Act and the Copyright Act.

On April 4, 2016, the Defendants filed a motion to dismiss the Plaintiffs' Communications Act claims.

On October 31, 2016, the Court denied the Defendants' motion to dismiss.

On December 1, 2017, the Plaintiffs filed their motion for summary judgment pursuant to Rule 56. On December 8, 2017, the Defendants filed a motion which they styled as one for summary judgment pursuant to Rule 56. However, as noted above, in the memorandum of law, the Defendants did not dispute their liability, and devoted their entire memorandum to the issue of damages.

## II. DISCUSSION

## A. The Legal Standard

Pursuant to Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving

party.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)).

"[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (internal quotation marks omitted)). In other words, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Barrows v. Seneca Foods Corp.,* 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Redd,* 678 F.3d at 174 (internal quotation marks omitted)). The Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.,* 677 F.3d 109, 119 (2d Cir. 2012).

The movant has the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). If a nonmoving party fails to make a sufficient showing on an essential element of their case where they will have the burden of proof, then summary judgment is appropriate. *Id.* at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Liberty Lobby,* 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for that party. *See Dawson v. Cty. of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004).

## B. As to the Parties' Arguments

The Plaintiffs contend that they are entitled to summary judgment on each of their claims, and request that the Court award them $18,100 in damages. Specifically, they request $5,400 in damages for the Defendants' violation of 17 U.S.C. § 504(c); $2,700 in damages for the Defendants' violation of 47 U.S.C. § 605(e)(3)(C)(i)(II); and $10,000 for the violation of 47 U.S.C. § 605(e)(3)(C)(ii).

The Defendants do not dispute their liability in their sole memorandum of law. Instead, they argue that the Plaintiffs waived their right to recover damages by failing to notify the Defendants of their violation once the Plaintiffs became aware of it; that the Plaintiffs can only recover under either the Copyright Act or the Communications Act, and cannot recover under both; and that if the Court decides to award damages, that it should award $750 to UFC or $1,005 to JHP.

## C. Application to the Plaintiffs' Claims

"Even when a motion for summary judgment is effectively unopposed, the District Court must 'examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial' before granting summary judgment." *1999/SEIU United Healthcare Workers E. v. Far Rockaway Nursing Home*, No. 14 Civ. 5033 (BMC), 2015 WL 13650033, at *1 (E.D.N.Y. Jan. 30, 2015) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)).

Therefore, despite the fact that many courts have granted summary judgment to plaintiffs where the defendants did not oppose the motion, *see Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544(KAM)(GRB), 2018 WL 1525686, at *14 (E.D.N.Y. Mar. 27, 2018) ("Nevertheless, plaintiffs do not oppose Presidio's motion for summary judgment that

7

Presidio did not willfully infringe the '547 Patent. Accordingly, the court will grant defendant's motion for summary judgment as to plaintiffs' claim for enhanced damages under 35 U.S.C. § 284 with respect to infringement the '547 Patent." (internal citations to the record omitted)); *Colonial Sur. Co. v. A&R Capital Assocs.*, No. 13CV7214LDHARL, 2017 WL 1229732, at *5 (E.D.N.Y. Mar. 31, 2017) (granting the plaintiff's motion for summary judgment on its claim for indemnification where "Defendants d[id] not oppose Plaintiff's motion on this ground. In other words, Defendants have conceded the point" (collecting cases)); *Landaverde v. Dave Murray Constr. & Design, Inc.*, No. CV 15-5379, 2017 WL 4012046, at *2 (E.D.N.Y. Sept. 11, 2017) ("Since the evidence demonstrates that there are no other individuals who could possibly be responsible for the operational control of Dave Murray Construction—and since Defendants do not oppose the motion with respect to this claim—the Court finds that there is no genuine issue of material fact with respect to Murray's individual liability."); *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 410 (E.D.N.Y. 2017) ("[S]ince Defendants do not oppose the motion with respect to this claim—the Court finds that there is no genuine issue of material fact with respect to Hirsch's individual liability. Accordingly, Plaintiffs' motion for summary judgment is granted as to this claim."), the Court will determine whether there are any remaining questions of material fact as to the Defendants' liability.

**1. As to the Plaintiff's Copyright Claims**

"To establish infringement of copyright, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (internal citations and quotation marks omitted). A defendant need not "copy' the copyrighted material to be held liable. "The word

'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in § 106." *Id.* (internal citations and quotation marks omitted).

The Defendants do not dispute that the Plaintiffs own the copyright to the Program, and that the Defendants exhibited the Program without a commercial license. Additionally, The Plaintiffs provided a certificate of registration of the copyright which is *prima facie* evidence of a valid ownership of a copyright. *See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 116 (S.D.N.Y. 2012) (citing 17 U.S.C. § 410(c); *Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir. 1992) (footnote omitted)).

By exhibiting the Program commercially without a license, the Defendants violated 17 U.S.C. §§ 106(1) (copyright owner has exclusive right to reproduce work), 106(3) (exclusive right to distribute), 106(4) (exclusive right to perform copyrighted work publicly), and 106(5) (exclusive right to display copyrighted work publicly). In so doing, the Defendants also violated 17 U.S.C. § 501 ("Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) . . . is an infringer of the copyright or right of the author . . . .").

In addition, Maupin's individual liability is established because he purchased the Roku; accessed UFC.tv on the Roku; and purchased the Program on the Roku so that it could be shown at the Establishment. It is well settled that "[a]ll persons and corporations who participate in, exercise control over, or benefit from . . . infringement are jointly and severally liable as copyright infringers." *Sygma Photo News, Inc. v. High Soc'y. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985) (internal citation omitted).

The Defendants claim that the Plaintiffs are not entitled to damages because they effectively waived their intellectual property rights in the Program by failing to act when they

became aware that the Defendants were going to illegally exhibit the Program. Although the Defendants raise this argument in support of their contention that the Plaintiffs are not entitled to damages, a waiver or license is a defense to a claim of copyright infringement. *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (citing *Oddo v. Ries,* 743 F.2d 630, 634 n.6 (9th Cir. 1984)).

"[A] claim of waiver requires proof of an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 482 (2d Cir. 2004) (internal citations and quotation marks omitted). A waiver "may not be inferred from mere silence or inaction." *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 540 (S.D.N.Y. 2015) (quoting *Bank of Am., N.A. v. 414 Midland Ave. Associates, LLC,* 78 A.D.3d 746, 911 N.Y.S.2d 157, 161 (N.Y. App. Div. 2010)). Courts "generally reject defenses predicated on a plaintiff's failure to act in the face of prior infringement" in federal copyright suits. *Id.* (citing *Petrella v. Metro–Goldwyn–Mayer, Inc.,* ––– U.S. ––––, 134 S. Ct. 1962, 1976, 188 L. Ed. 2d 979 (2014); *Capitol Records,* 372 F.3d at 484).

Measured under these standards, the Defendants' waiver defense cannot withstand scrutiny. The Plaintiffs' mere inaction for a number of hours does not amount to a waiver because silence or inaction does not amount to a waiver. The Plaintiffs never gave any explicit indication that they intended to release the Defendants from liability for infringement, and the facts make clear that the Plaintiffs did not intend to release the Defendants from such liability. *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2017 WL 5032993, at *3 (S.D.N.Y. Nov. 2, 2017) (stating that the defendants could not establish a defense for waiver where "[the plaintiff] gave no explicit indication that he intended to release [the defendant] from liability

for infringement. And [] the totality of circumstances makes clear that [the plaintiff] had no such intention" (internal citations omitted)).

The Defendants' claimed defense may be better understood as an implied license. *See id.* (stating that although the defendants argued that they had a waiver, they were seeking the benefits of an implied license (internal citation omitted)). However, the Defendants did not plead an implied license as an affirmative defense. (*See* Answer to Am. Compl., ECF No. 22). The Defendants plead the defenses of waiver and failure to mitigate damages. In their memorandum of law, they abandoned the latter defense. (*See* Defs.' Mem. of Law in Opp. to Pls.' Mot. for Summ. J. and in Supp. of Mot. for Summ. J., ECF No. 52-1 ("Defs.' Mem. of Law") at 24). Accordingly, the Defendants waived any defense for an implied license. *Barcroft Media*, 2017 WL 5032993, at *3 ("But CMG did not plead the existence of a license as an affirmative defense, and thus waived any such claim." (citing *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995))); *see also Doubleday & Co. v. Curtis,* 763 F.2d 495, 503 (2d Cir. 1985) ("[A] party's failure to plead an affirmative defense bars its invocation at later stages of the litigation."); *Design Options v. Bellepointe,* 940 F. Supp. 86, 92 (S.D.N.Y.1996) ("An unpleaded affirmative defense raised for the first time in a motion for summary judgment has been held to have been waived under Rule 8(c)." (internal citation omitted)).

In any event, such a defense would fail. "An implied license is revocable[] [] where no consideration has been given for the license." *Keane Dealer*, 968 F. Supp. at 947 (internal citation omitted). No consideration was given by the Defendants here, and the Plaintiffs clearly revoked any license by instituting this suit and by notifying the Defendants of their infringement on August 22, 2013. *See id.* ("If no consideration was given, the license was revocable, and the institution of

11

this lawsuit would constitute revocation." (internal citation omitted)); *Peer Int'l Corp. v. Luna Records,* 887 F. Supp. 560, 566 (S.D.N.Y.1995) (commencement of infringement action "should have resolved any doubts" regarding plaintiff's intent to terminate license).

Furthermore, there was no meeting of the minds between the parties. *See Barcroft Media*, 2017 WL 5032993, at *3 ("[T]he defense would fail on the merits, as it requires proof, at a minimum, 'of a meeting of the minds between the licensor and licensee such that it is fair to infer that the licensor intended to grant a nonexclusive license.'" (quoting *Assoc. Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 562 (S.D.N.Y. 2013))); *Design Options*, 940 F. Supp. at 92 ("[A]n implied license to use a copyrighted work cannot arise out of the unilateral expectations of one party. There must be objective conduct that would permit a reasonable person to conclude that an agreement had been reached." (internal citations and quotation marks omitted)).

Therefore, the Defendants' defense of waiver fails, and the Plaintiffs are entitled to summary judgment on their Copyright Act claims. Accordingly, the Plaintiffs' motion for summary judgment on those claims is granted, and the Defendants' motion for summary judgment dismissing those claims is denied.

**2. As to the Plaintiff's Communications Act Claims**

The Communications Act prohibits the unauthorized reception of cable programs. Section 553 states that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1)

Section 605 in turn states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign

12

> communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605.

This Court previously held that exhibitions of television programs broadcasted via the internet could serve as a basis for liability under Sections 553 and 605 where the transmission originated as a satellite signal. (Mem. of Dec. and Order denying Defs.' Mot. to Dismiss, ECF No. 29 at 14; *Joe Hand Promotions, Inc. v. Maupin*, No. 15-cv-6355 (ADS) (AKT), 2016 WL 6459631, at *7 (E.D.N.Y. Oct. 31, 2016)); *see also Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 488 (S.D.N.Y. 1999) ("It is well established that unlicensed reception and exhibition of a cable transmission violates section 553 of title 47 . . . .").

Therefore, as the Defendants admit that they broadcasted the Program without a commercial license, and the Defendants' defense of waiver necessarily fails, the Plaintiffs are entitled to summary judgment on their Communications Act claims. Maupin's individual liability is established because he purchased the Roku and accessed the website. In that way, he specifically "participated in, authorized or ha[d] knowledge of the violation," *J & J Sports Prods., Inc. v. Emily Bar Rest. Inc.*, No. 15-cv-6499, 2016 WL 6495366, at *2 (E.D.N.Y. Sept. 27, 2016), and played a direct role in the decision to display the Program. *J & J Sports Prods., Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173 (ENV) (JO), 2014 WL 4700014 (E.D.N.Y. Aug. 29, 2014), *report and recommendation adopted*, 2014 WL 4699704 (E.D.N.Y. Sept. 19, 2014). Accordingly, the

Plaintiffs' motion for summary judgment on their Communications Act claims is granted, and the Defendants' motion for summary judgment dismissing those claims is denied.

The Court therefore turns to the parties' point of contention—the issue of damages.

**D. As to the Plaintiffs' Damages**

    **1. Statutory Damages Under the Copyright Act**

As to statutory damages, the Copyright Act states that

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.
> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(1)-(c)(2).

"To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) (internal citations and quotation marks omitted).

    **2. Statutory Damages Under the Communications Act**

When a court determines that a defendant's conduct has violated both Sections 553 and 605 of the Communications Act, a plaintiff may recover damages under one of those sections only.

*Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 127 (2d Cir. 1996). Section 605 provides for greater recovery than 553, and the Plaintiffs seek recovery under Section 605.

Section 605(e)(3)(C)(i)(II) states that "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition, § 605(e)(3)(C)(ii) provides that "where the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)." *Id.* at § 605(e)(3)(C)(ii). "Section 605 does not, however, give guidelines for determining statutory damages, relying instead on the discretion of the court." *Googies*, 77 F. Supp. 2d at 489.

"Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks." *Joe Hand Promotions, Inc. v. Duke Bazzel Tobacco & Lounge LLC*, No. 1:13-CV-300 NAM/CFH, 2014 WL 2711168, at *4 (N.D.N.Y. June 16, 2014) (citing *Kingvision Pay–Per–View Ltd. v. El Rey Del Bistec y Caridad, Inc.,* No. 01–CV–6562, 2001 WL 1586667, at *3 (S.D.N.Y. Dec. 12, 2001)).

### 3. Application to the Plaintiffs' Claims

The Plaintiffs request $18,100 in damages for the Defendants' allegedly willful violations of the Acts. The Defendants counter that the Court should elect not to award any damages based on the Plaintiffs' alleged waiver, or that the Court should award minimal damages under either the Communications Act or the Copyright Act, but not both.

First, the Court finds that it is appropriate to award damages under both the Copyright Act and the Communications Act. Each Act vindicates separate rights, and courts have found it proper to award damages under both Acts. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990) (trial court awarded damages under both statutes); *Premium Sports, Inc. v. Pereira*, No. CV 14-6240 (KSH), 2015 WL 5770517, at *3 (D.N.J. Sept. 30, 2015) (awarding damages under both statutes); *Pac. Stock, Inc. v. MacArthur & Co.*, No. CIV. 11-00720 JMS, 2012 WL 3985719, at *6 (D. Haw. Sept. 10, 2012) (granting damages under both statutes), *report and recommendation adopted*, No. CIV. 11-00720 JMS, 2012 WL 4718313 (D. Haw. Oct. 2, 2012); *Top Rank, Inc. v. Ortiz*, No. 01CIV.8427 (WHP)(FM), 2003 WL 1960211, at *3–4 (S.D.N.Y. Mar. 27, 2003) (awarding $2000 under the Communications Act and $1500 under the Copyright Act); *Main Events/Monitor Prods. v. Batista*, No. 96 CV 5089, 1998 WL 960305, at *1 (E.D.N.Y. Dec. 8, 1998) (awarding damages under both statutes); *Top Rank, Inc. v. Allerton Lounge Inc.*, No. 1:96-CV-7864 SS, 1998 WL 35151728, at *5 (S.D.N.Y. Mar. 5, 1998) (finding that damages under both statutes were appropriate), *report and recommendation adopted as modified*, 1998 WL 35152791 (S.D.N.Y. Mar. 25, 1998); *Spencer Promotions, Inc. v. 5th Quarter Enterprises Inc.*, No. C-94-0988 CW, 1996 WL 438789, at *8 (N.D. Cal. Feb. 21, 1996) (awarding $50,000 in damages between the two Acts after concluding "that an award of statutory damages under both the Cable Communications Act and the Copyright Act for Defendants' violations under both acts is appropriate in this case"); *Nat'l Football League v. SJS of WNY, Inc.*, No. 97-CV-0077E(F), 1998 WL 268836, at *2 (W.D.N.Y. Apr. 29, 1998) (awarding damages under both statutes); *Home Box Office, a Div. of Time Warner Entm't Co., L.P. v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing previous damages of $150,000 pursuant to the Communications Act and $100,000 pursuant to the Copyright Act); *see also Innovation*

*Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 175 (E.D.N.Y. 2016) (awarding damages under both the Lanham Act and the Copyright Act and stating that "[a]lthough the Second Circuit has cautioned that, 'a plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery,' the court finds that the injuries suffered by plaintiffs for trademark and copyright infringement are distinct, as contemplated by Congress in enacting two separate statutory schemes, neither of which precludes recovery under both statutes." (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995))).

Indeed, a "[p]laintiff is not barred from recovering under more than one federal act when violations of separate federal acts are based on the same operative facts." *Allerton Lounge*, 1998 WL 35151728, at *5 (quoting *Spencer Promotions*, 1996 WL 438789, at *8 (internal quotation marks omitted)).

Therefore, the Court finds that it is appropriate to award damages under both the Copyright Act and the Communications Act.

Courts in this circuit employ two different approaches when awarding damages for an unauthorized transmission of a program. Some have multiplied the number of patrons present by a dollar amount, typically the residential charge for the event. Others have awarded a flat amount. *See Kingvision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 514 (E.D.N.Y. 2006) (collecting cases for both classes); *Googies*, 77 F. Supp. 2d at 489–90 (same).

If statutory damages were assessed at the rate of $59.99 per patron as some courts have done, this would result in an award of $419.93. The Defendants avoided paying a $900 commercial licensing fee. While this was not a particularly egregious case, damages should deter future would-be infringers by letting them know that they should pay the licensing fee, and that failing to do so is costly.

In the Court's discretion, the Court awards a flat amount of $1500 to the Plaintiffs for the Defendants' violations of the Communications Act, and $1500 for the Copyright Act violations.

In addition, the Court finds that the Defendants' violations were willful. Maupin purposefully evaded the $900 commercial licensing fee that he would have had to pay if he had purchased the Program on Pay-Per-View. Instead, he paid a mere $59.99 by accessing UFC.tv on the Roku. Both the website and the streaming device notified users that the content and the streaming service were not available for commercial use. In that way, Maupin recklessly disregarded the Plaintiffs' rights or were willfully blind to them. *Island Software & Computer Serv.*, 413 F.3d at 263.

The Defendants also advertised the Program on their Facebook page. While there is no evidence other than previous advertisements that the Defendants have repeatedly violated the statutes, or that they charged a cover, the Court finds that the Defendants' violation of the statutes was willful. See *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126–27, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) (defining willfulness defined as "disregard for the governing statute and an indifference for its requirements"); *see also Lalaleo*, 429 F. Supp. 2d at 515 (stating that willfulness "is established by the fact that an event is broadcast, without authorization, through a defendant's cable box" (citing *Googies*, 77 F. Supp. 2d at 490)).

Therefore, as the Defendants' violations were willful, the Court doubles the damages under each statute. *See Ortiz*, 2003 WL 1960211, at *3 ("Furthermore, because Ortiz's violation appears to have been willful, I recommend that the award be doubled . . . ." (citing *Entm't by J&J Inc. v. Nina's Rest. & Catering*, No. 01 CIV.5483 KMW RLE, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002))).

Accordingly, the Court awards the Plaintiffs $6000 in damages. The Defendants are liable jointly and severally.

### III. CONCLUSION

For the reasons stated above, the Plaintiffs' motion for summary judgment pursuant to Rule 56 is granted; and the Defendants' motion for summary judgment is denied. The Plaintiffs are awarded $6,000 in damages.

The Plaintiffs have also requested attorneys' fees and costs. The Defendants do not dispute that the Plaintiffs are entitled to attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). The Plaintiffs' attorneys have not provided any documentation regarding their fees or costs. Therefore, the request for attorneys' fees is denied without prejudice with leave to refile as a formal motion with supporting documentation within thirty days of entry of this order.

It is **SO ORDERED:**

Dated: Central Islip, New York

May 25, 2018

*__/s/ Arthur D. Spatt__*

ARTHUR D. SPATT

United States District Judge