**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ZUFFA, LLC, d/b/a ULTIMATE FIGHTING
CHAMPIONSHIP, and JOE HAND PROMOTIONS,
INC.,

Plaintiffs,

-against-

SOUTH BEACH SALOON, INC., d/b/a SOUTH
BEACH SALOON, and MICHAEL J. MAUPIN,

Defendants.
-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 15-6355 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.   PRELIMINARY STATEMENT

Plaintiffs Zuffa, LLC, d/b/a Ultimate fighting Championship ("UFC"), and Joe Hand

Promotions ("Joe Hand") (collectively, "Plaintiffs"), commenced this action against Defendants

South Beach Saloon, Inc., d/b/a South Beach Saloon ("South Beach"), and Michael J. Maupin

("Maupin") (collectively, "Defendants"), alleging that Defendants' public exhibition of a "Pay-

Per-View" event without license or permission violated the Copyright Act, 17 U.S.C. §§ 106 and

501, and the Federal Communications Act, 47 U.S.C. §§ 553 and 605.  *See generally* Plaintiffs'

Amended Complaint ("Am. Compl.") [DE 23].  The parties engaged in discovery, with the

undersigned addressing several discovery disputes in the process.  *See* DE 32-38.  After the close

of discovery, the parties filed cross-motions for summary judgment, *see* DE 45-53, and on

May 25, 2018, Judge Spatt granted Plaintiffs' motion for summary judgment and denied

Defendants' motion.  *See generally Joe Hand Promotions, Inc. v. Maupin*, No. 15-CV-06355,

2018 WL 2417840 (E.D.N.Y. May 25, 2018).  In his decision, Judge Spatt awarded Plaintiffs

$6,000 in damages; however, he denied Plaintiffs' motion for attorneys' fees and costs, without

prejudice, and with leave to re-file as a formal motion with supporting documentation. *Id*. at 7-10. Plaintiffs subsequently filed their motion for attorneys' fees and costs, *see* Plaintiffs' Memorandum in Support of their Motion for Attorneys' Fees and Costs ("Pls.' Mem.") [DE 57]; Plaintiffs' Memorandum in Reply ("Pls.' Reply"), which Defendants have opposed. *See* Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Defs.' Opp'n.") [DE 60].

Subsequently, Judge Spatt referred Plaintiffs' motion for attorneys' fees and costs to this Court for a Report and Recommendation as to whether the motion should be granted, and the amount of damages and fees to be awarded, if any. *See* DE 59. For the reasons set forth below, this Court recommends to Judge Spatt that Plaintiffs' motion for attorneys' fees and costs be GRANTED and that Plaintiffs be awarded $46,375.00 in attorneys' fees and $668.86 in costs. The Court further recommends that Plaintiffs' motion for sanctions against Defendants and Defendants' counsel, which forms part of Plaintiffs' motion for fees and costs, be DENIED.

## II.   BACKGROUND

Judge Spatt's summary judgment decision is the appropriate starting point for this Court's adjudication of Plaintiffs' motion, and the Court begins with a review of those findings.

### A.   Judge Spatt's Decision on Summary Judgment

At the outset of his decision, Judge Spatt summarized the relevant undisputed facts set forth in the parties' Rule 56.1 Statements. For context, the Court reproduces below the undisputed, material facts as identified by Judge Spatt.

> UFC promotes mixed martial arts fights. It is the world's most popular mixed martial arts organization. UFC fights are broadcast on television, either on networks or on Pay-Per-View. JHP distributes and licenses Pay-Per-View sports programs to commercial locations such as bars and restaurants. JHP has been the exclusive commercial distributor of UFC Pay-Per-View events

since 2001. Commercial establishments pay JHP a licensing fee for Pay-Per-View programs based on their occupancy.

UFC's website provides information and instructions for owners of commercial establishments to legally show UFC Pay-Per-View events, and includes a link to JHP's website.

Cable and satellite television providers scramble, restrict, or block commercial customer accounts and equipment from ordering or receiving Pay-Per-View programs. In order to access the Pay-Per-View event, the commercial location must pay commercial licensing fees to JHP. JHP then notifies the commercial establishment's cable or satellite provider to unlock the Pay-Per-View event.

On August 21, 2013, UFC hosted Ultimate Fighting Championship® 163: Aldo v. Korean Zombie (the "Program"). The Program was broadcasted via satellite uplink from the live event in Rio De Janeiro, Brazil, and then transmitted to cable, satellite and digital television providers for distribution. It was available solely on Pay-Per-View. Residential customers paid $59.99 to view the Program. Commercial establishments had to obtain a commercial license from JHP to exhibit the Program. 144 commercial locations paid JHP for the right to legally exhibit the Program.

UFC owns the copyright to the audiovisual television broadcast of the Program and registered it with the United States Copyright Office within three months of its publication. JHP held the exclusive commercial distribution rights for the Program. Prior to the start of the Program, a "Piracy Notice" and "Copyright Warning" were each broadcast to viewers.

The Defendants own and operate the South Beach Saloon (the "Establishment"). During the relevant time, the Establishment had a commercial cable television account with Cablevision. The Establishment's Cablevision account was blocked from accessing the Program. The Defendants' service agreement with Cablevision stated "Pay Per View services are not available to commercial customers." (Pls.' 56.1 ¶ 19 (internal citation omitted)). In order to legally exhibit the Program, the Establishment would have had to pay $900 to JHP for a commercial license. The Defendants never paid the commercial licensing fee, and JHP never notified Cablevision to unblock the Program on the Establishment's Cablevision account. JHP did not authorize the Defendants to exhibit the Program.

At some point, Maupin purchased a Roku Streaming Device (the "Roku"). The Roku connects a television to the Internet and allows users to stream available Internet content.

The Roku User Agreement states that it is "intended for personal, non-commercial use only. You may not use [the Roku] for any commercial or illegal purpose." (*Id.* ¶ 26 (quoting Roku End User Agreement, Pls.' Ex. B(8) to Janis Decl.)).

UFC.tv is a website that provides personal users with access to UFC programming. The Program was available for personal users on UFC.tv. The terms and conditions on the UFC.tv website restrict use to "residential, non-commercial use only." (*Id.* ¶ 27 (internal citation and quotation mark omitted)).

Maupin used the Roku to access the UFC.tv website. Using the Roku, he broadcast the Program to patrons of the Establishment. On the night in question, the Establishment was open to the public, and food and alcoholic beverages were available for purchase. The Establishment did not charge a premium for food or drinks, nor did it charge a cover.

The Establishment advertised on its Facebook page that it would be exhibiting the Program. The Establishment's exhibition of the Program was documented by a private investigator. The investigator opined that the Establishment could hold fifty individuals, and that at three different points throughout the night in question, he counted seven people at the Establishment.

On August 22, 2013, the Plaintiffs' attorney sent a letter to the Defendants notifying them of the Defendants' alleged violations of the Copyright Act and the Communications Act.

*Maupin*, 2018 WL 2417840, at *1-*2.

As to Plaintiffs' cause of action under the Copyright Act, Judge Spatt found as follows:

The Defendants do not dispute that the Plaintiffs own the copyright to the Program, and that the Defendants exhibited the Program without a commercial license. Additionally, The Plaintiffs provided a certificate of registration of the copyright which is *prima facie* evidence of a valid ownership of a copyright. *See Psihoyos v. Pearson Educ., Inc.*, 855 F.Supp.2d 103, 116 (S.D.N.Y. 2012) (citing 17 U.S.C. § 410(c); *Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir. 1992) (footnote omitted)).

4

> By exhibiting the Program commercially without a license, the Defendants violated 17 U.S.C. §§ 106(1) (copyright owner has exclusive right to reproduce work), 106(3) (exclusive right to distribute), 106(4) (exclusive right to perform copyrighted work publicly), and 106(5) (exclusive right to display copyrighted work publicly). In so doing, the Defendants also violated 17 U.S.C. § 501 ("Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) ... is an infringer of the copyright or right of the author....").
>
> In addition, Maupin's individual liability is established because he purchased the Roku; accessed UFC.tv on the Roku; and purchased the Program on the Roku so that it could be shown at the Establishment.[1]

*Maupin*, 2018 WL 2417840, at *4.  As to Plaintiffs' claims under the Federal Communications Act, Judge Spatt found that "as the Defendants admit that they broadcasted the Program without a commercial license, and the Defendants' defense of waiver necessarily fails, the Plaintiffs are entitled to summary judgment" on their claims under both 47 U.S.C. §§ 553 and 605.  *Id*. at *6.

With respect to damages, Plaintiffs sought $18,100 in damages for Defendants' allegedly willful violation of both the Copyright Act and the Federal Communications Act.  *Maupin*, 2018 WL 2417840, at *8.  Over Defendants' opposition, Judge Spatt found it "appropriate to award damages under both the Copyright Act and the Communications Act," because "[e]ach Act vindicates separate rights, and courts have found it proper to award damages under both Acts."  *Id*.  Examining the two methods courts in the Second Circuit use when awarding damages for unauthorized transmission of a program – *i.e.*, (i) multiplying the number of patrons present at the establishment by a dollar amount, or (ii) awarding a flat amount – Judge Spatt awarded a flat amount of $1,500.00 to Plaintiffs for Defendants' violations of the Federal Communications Act

---

[1]  Judge Spatt found unconvincing Defendants' arguments that Plaintiffs had impliedly waived their rights in the Program, or that Defendants had an implied license to broadcast the Program.  *See Maupin*, 2018 WL 2417840, at *4-*6.

and $1,500.00 for their violations of the Copyright Act.  *Id*. at *9.  Moreover, the Court found

Defendants' violations to be willful and therefore doubled the damages under each statute, for a

total damages award of $6,000.00.  *Id*.

As noted, Judge Spatt denied Plaintiffs' motion for attorneys' fees and costs, without

prejudice, and with leave to re-file with documentary support for their application.  *Id*. at *10.

### B.    Procedural Background

Plaintiffs filed their initial Complaint in this action on November 5, 2015.  *See* DE 1.  On

January 7, 2016, the Clerk of the Court issued a certificate of default certifying the Defendants'

failure to answer or appear in the action.  *See* DE 11.  Plaintiffs filed a formal motion for entry of

default judgment on January 15, 2016.  *See* DE 12.  Thereafter, counsel for Defendants filed a

notice of appearance and an opposition to Plaintiffs' motion for default judgment.  *See* DE 14,

15.  This Court issued an Order on February 8, 2016, directing Defendants to respond within one

week as to whether they were seeking to vacate the Clerk's certificate of default.  *See* Electronic

Order dated February 8, 2016.  On February 16, 2016, Defendants filed a formal motion to set

aside the Clerk's certificate of default, *see* DE 19, which Judge Spatt granted on March 12, 2016.

*See* Electronic Order dated March 12, 2016.  Defendants filed an Answer on March 14, 2016, *see*

DE 22, and on April 1, 2016, Plaintiffs filed an Amended Complaint which became and

remained the operative pleading through summary judgment.  *See* DE 23.  Several days later, on

April 4, 2016, Defendants filed a motion to dismiss the Plaintiffs' claims brought under the

Federal Communications Act.  *See* DE 24-28.  Judge Spatt denied the Defendants' partial motion

to dismiss in a decision issued on October 31, 2016.  *See* DE 29; *Joe Hand Promotions, Inc. v.*

*Maupin*, No. 15-CV-06355, 2016 WL 6459631 (E.D.N.Y. Oct. 31, 2016).  Defendants then filed

an Answer to the Amended Complaint on November 2, 2016.  *See* DE 31.

The parties appeared before the undersigned for a telephone conference on December 7, 2016, *see* DE 32, as well as a subsequent discovery status conference on March 22, 2017, at which time a final scheduling Order was put in place. *See* DE 36. At the discovery status conference, the Court also addressed several disputes between the parties. *See id*. On September 11, 2017, Plaintiffs filed a request for a pre-motion conference with Judge Spatt for purposes of moving for summary judgment. *See* DE 39. Defendants filed the same request the following day. *See* DE 40. Judge Spatt held a pre-motion conference on October 26, 2017, at which time a briefing schedule for the parties' cross-motions for summary judgment was set. *See* DE 43. The motions were filed between December 1, 2017 and January 22, 2018. *See* DE 45-53. Judge Spatt issued his decision on the cross-motions for summary judgment on May 25, 2018. *See* DE 55.

Pursuant to Judge Spatt's summary judgment decision, Plaintiffs' motion for attorneys' fees and costs was filed on June 27, 2018. *See* DE 56-58. Defendants' opposition was filed on July 18, 2018, *see* DE 60, and Plaintiffs' reply in further support of their motion was filed on July 25, 2018. *See* DE 61. Judge Spatt referred Plaintiffs' motion to this Court for a Report and Recommendation as to whether the motion should be granted on June 28, 2018. *See* DE 59. On January 3, 2019, this Court issued an Order directing Plaintiffs' counsel to submit additional documentary evidence in support of their motion, *see* DE 62, which information was filed on January 25, 2019. *See* DE 63.

C.    **The Instant Fee Application**

1.    *Plaintiffs' Motion*[2]

Plaintiffs argue that they are entitled to attorneys' fees, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), and, under the lodestar method, are entitled to $97,320.00 in attorneys' fees and $1,095.98 in costs.  *See* Pls.' Mem. at 1, 7.  Plaintiffs seek fees for the work of two attorneys – Attorney Jekielek at a rate of $400 per hour, and Attorney Janis at a rate of $300 per hour.  *Id*. at 7.  They argue that these rates are in line with what other courts have awarded in the Eastern District of New York.  *Id*. at 8.  As for the amount of time spent litigating the action, Plaintiffs' memorandum states that counsel spent a total of 314.1 hours prosecuting this action.  *Id*. at 9. Plaintiffs have provided contemporaneous billing records in support of this figure.  According to Plaintiffs, 314.1 hours is a conservative estimate because it does not include time for work performed by paralegals and legal assistants, time for work performed prior to Defendants' opposition to Plaintiffs' motion for default judgment, and time spent on brief telephone calls, e-mails, and other similar tasks.  *Id*.

Plaintiffs also ask the Court to find Defendants' counsel jointly and severally liable for one half of the Court's award of attorneys' fees and costs pursuant to both 28 U.S.C. § 1927 and the Court's inherent authority.  Pls.' Mem. at 10-11.  In seeking this relief, Plaintiffs first argue that "Defendants' dispute of liability is utterly devoid of a legal or factual basis" because "Defendants admitted to facts that gave rise to their liability to Plaintiffs for their claims in this suit."  *Id*. at 11 (quotation omitted).  In light of this fact, Plaintiffs assert that the following acts indicate bad faith on the part of Defendants' counsel sufficient to warrant holding counsel

---

[2]  Plaintiffs submitted a brief reply which generally challenges the arguments made by Defendants in their opposition as unsupported and meritless.  *See generally* Pls.' Reply.

himself partially liable: counsel's (1) opposing Plaintiffs' motion for default judgment without moving to vacate entry and without requesting that Plaintiffs' counsel stipulate; (2) seeking a Rule 12(b)(6) dismissal; (3) engaging in harassing class action-type litigation in a case without a class; (4) serving harassing, overly broad, and irrelevant discovery requests; (5) engaging in meritless motion practice, including a motion to dismiss, discovery motions, and a motion for summary judgment; and (6) refusing to stipulate to liability. *Id*. at 12.

### 2.    *Defendants' Opposition*

Defendants oppose Plaintiffs' fee application on several grounds. First, Defendants argue that the degree of success obtained by Plaintiffs in no way supports the amount of fees they seek. Specifically, Defendants point out that Plaintiffs sought damages upwards of $170,000 in their initial Complaint and $490,000 in their Amended Complaint. However, Plaintiffs were awarded only $6,000 by Judge Spatt – just 1.2% of their initial prayer for relief. Defs.' Opp'n. at 2. Similarly, Defendants observe that in their motion for summary judgment, Plaintiffs "sought $18,000, but the Court awarded less tha[n] one-third of that amount. Rather than seek a reasonable settlement from the outset, JHP and UFC pressed their luck, obtained a mediocre award, at best, and ran up exorbitant attorneys' fees in the process (and then blamed Maupin and McCann, his attorney, for defending the action.)" *Id*. at 3.

Defendants also contend that "[u]nder no circumstances are the hours allegedly expended by JHP and UFC's counsel reasonable based on the Second Circuit's test for awarding attorneys' fees." Defs.' Opp'n. at 4. Defendants highlight at least fifteen billing entries which they see as "blatantly suspect." *Id*. at 4; *see id*. at 4-6.

Finally, Defendants argue that because Attorney McCann represented his clients in good faith based on persuasive legal authority, no basis exists to hold him personally liable for Defendants' attorneys' fees. *See* Defs.' Opp'n. at 7-10. Defendants' opposition addresses each

of the grounds which Plaintiffs argue demonstrates bad faith litigation, and specifically contend that (1) failing to oppose Plaintiffs' motion for default without moving to vacate the Clerk's entry of default was "a minor procedural oversight;" (2) Defendants had a meritorious argument that the Federal Communications Act did not apply to streaming video, notwithstanding the Court's disagreement, and their Rule 12(b)(6) motion was therefore not indicative of bad faith; (3) there is no merit to the contention that Defendants engaged in "class action-type litigation in a case without any class;" (4) Defendants' seemingly broad discovery requests were relevant to Plaintiffs' "loss of goodwill" and "loss of reputation" damages claims, notwithstanding the Court's determination that they were beyond the scope of the lawsuit; (5) Defendants' motion practice was not meritless; and (6) Defendants' could not have stipulated to liability and still preserved issues for appeal, and therefore their refusal to do so was not unreasonable.  *Id.*

III.   **DISCUSSION**

   A.   **Entitlement to and Amounts of Attorneys' Fees and Costs**

   "The Court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails" on a claim brought under Section 605 of the Federal Communications Act.  47 U.S.C. § 605(e)(3)(B)(iii).  There does not appear to be any disagreement as to Plaintiffs' entitlement to attorneys' fees and costs under the terms of this statute.  *See Maupin*, 2018 WL 2417840, at *10 ("The Defendants do not dispute that the Plaintiffs are entitled to attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).").  Rather, Defendants argue that, based on the specific characteristics of the instant litigation, Plaintiffs' fee award should be nominal.  The Court's analysis will therefore focus on the appropriate amount of fees and costs which should be awarded to Plaintiffs.

10

### 1.    *Applicable Law:  The Lodestar Analysis*

The Court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  In adjudicating a motion for attorneys' fees, both the Second Circuit and the Supreme Court have held that "the lodestar method — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)).  The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 183-84.

### a.    **Reasonable Hourly Rate**

In determining reasonable hourly rates, the Court considers this Circuit's adherence to the "forum rule," which states that a district court should generally use the prevailing hourly rates in the district where it sits.  *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v. HDMJ Restaurant, Inc.*, No. 09 Civ. 240, 2013 WL 4811225, at *19 (E.D.N.Y. Sept. 9, 2013) (internal citations omitted); *Pinzon v. Paul Lent Mechanical Sys.*, No. 11 Civ. 3384, 2012 WL 4174725, at *5 (Aug. 21, 2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). "Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour."  *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018); *see Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016); *Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016);

*OneWest Bank, N.A. v. Denham* No. CV 14-5529, 2015 WL 5562980, at *12 (E.D.N.Y. Aug. 31, 2015), *adopted by* 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation Pension & Welfare Funds v. L&P Interiors, Inc.*, No. CV 14-3316, 2015 WL 5562316, at *13 (E.D.N.Y. Aug. 14, 2015), *adopted by* 2015 WL 5562340 (E.D.N.Y. Sept. 18, 2015); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).

"Some judges 'have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'" *Safeco Ins. Co. of Am.*, 2018 WL 2766139, at *7 (internal quotation marks omitted) (quoting *Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014)); *Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on the Piers, LLC*, No. 18-CV-3642, 2019 WL 440641, at *5 (E.D.N.Y. Jan. 14, 2019) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners . . . ."), *report and recommendation adopted sub nom. Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on Piers, LLC*, No. 18-CV-3642, 2019 WL 438476 (E.D.N.Y. Feb. 4, 2019); *Eichenblatt v. Kugel*, No. 17 CV 559, 2018 WL 3202079, at *10 (E.D.N.Y. May 15, 2018) ("Prevailing hourly rates for attorneys in the Eastern District of New York typically range "from $300 to $450 for partners [and] $200 to $300 for senior associates."); *see Nicaisse v. Stephens & Michaels Associates, Inc.*, No. CV 14-1570, 2016 WL 4367222, at *4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016).

Although the Second Circuit has not recently revisited the issue of what constitutes a reasonable fee within this district since its discussion in *Konits v. Karahalis*, 409 Fed. App'x

12

418, 422-23 (2d Cir. 2011) (summary order), which affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour, a number of district courts within this district continue to rely, in part, on *Konits* in determining the appropriate range of fees.  *See Morales v. B&M Gen. Renovation Inc.*, No. 14 CV 7290, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9, 2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this district is between $300 and $400"), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016); *Incredible Foods Grp., LLC*, 2016 WL 4179943, at *3 (same); *Valdez*, 2016 WL 3079028, at *8 (same); *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15 5429, 2016 WL 7167955, at *9 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS*, No. CV 15-5429, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (same); *Gesualdi v. Paladin Constr. Corp.*, No. CV 14-7291, 2016 WL 943589, at *11 (E.D.N.Y. Feb. 18, 2016), *report and recommendation adopted*, 2016 WL 953261 (E.D.N.Y. Mar. 11, 2016) (same).

With the forum rule as a guide, courts also "take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended."  *Pinzon*, 2012 WL 4174725, at *5; *United States v. City of New York*, No. 07-CV-2067, 2013 WL 5542459, at *6 (E.D.N.Y. Aug. 30, 2013) ("In addition to the prevailing market rates, the court must also consider case-specific factors.").  These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney

> expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. *See Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017). Additionally, courts should consider:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[3]

---

[3]   These are the 12 factors initially set out by the Fifth Circuit in *Johnson v. Georgia Highway Express. Inc.*, 488 F.2d 714 (5th Cir. 1974). While the Second Circuit in *Arbor Hill* stated that "in determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors," 522 F.3d at 190, "[t]he Supreme Court recently approved the lodestar approach over the more discretionary approach that had been adopted by the 5th Circuit in [*Johnson*]." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 506 (S.D.N.Y. 2012) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). Yet the 12 *Johnson* factors appear to remain part of a comprehensive approach to determining the rate a reasonable client would be willing to pay. *See, e.g.*, *New York City Dist. Council of Carpenters*, No. 16-CV-3429, 2018 WL 3768586, at *2 (E.D.N.Y. July 23, 2018), *report and recommendation adopted sub nom. Trustees of New York City Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc.*, No. 16-CV-3429, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); *Gutierrez v. Taxi Club Management, Inc.*, 17 Civ. 532, 2018 WL 3432786, at *13 (E.D.N.Y. June 25, 2018), *report and recommendation adopted sub nom. Gutierrez v. Taxi Club Mgmt., Inc.*, No. 17-CV-0532, 2018 WL 3429903 (E.D.N.Y. July 16, 2018); *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12-CV-7311, 2016 WL 5812105, at *5 (S.D.N.Y. Sept. 22, 2016); *Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *13 (E.D.N.Y. Oct. 1, 2012), *report and recommendation adopted*, No. 11-CV-4232, 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012).

*Gomez v. Midwood Lumber & Millwork, Inc.*, No. 17-CV-3064, 2018 WL 3019877, at *4
(E.D.N.Y. June 17, 2018) (citing *Bogosian v. All Am. Concessions,* No. 06-CV 1633, 2012 WL
1821406, at *2 (E.D.N.Y. May 18, 2012)); *Arbor Hill*, 522 F.3d at 190.  "The party seeking
reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours
spent and rates charged." *Finkel v. Omega Comm'n Svcs., Inc.*, 543 F. Supp. 2d 156, 164
(E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d
1136 (2d Cir. 1983)).

### b.    Reasonableness of Hours Billed

To determine whether the number of hours spent by counsel on a given task was
reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the
practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus.,
Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting
*Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  A court should "exclude hours that were
'excessive, redundant, or otherwise unnecessary' to the litigation." *Cho v. Koam Medical Servs.
P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley*, 461 U.S. at 434); *Barbu v.
Life Ins. Co. of N. Am.*, No. 12-CV-1629, 2015 WL 778325, at *4 (E.D.N.Y. Feb. 24, 2015).
Likewise, where counsel relies on vague or excessive entries or block billing practices which
make it difficult for a court to assess reasonableness, an across-the-board fee reduction is
warranted.  *Anderson v. Cty. of Suffolk*, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y.
Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts
are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions
as high as 40% based solely on vague billing entries"); *see Barbu*, 2015 WL 778325, at *5
(imposing a 33% reduction in total hours based upon vague entries and block billing); *Caban v.
Employee Sec. Fund of the Elec. Products Indus. Pension Plan*, No. 10–CV–389, 2015 WL

7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (imposing a 33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks); *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 112 (E.D.N.Y. 2013) (imposing a 40% reduction due to vague and unrelated entries); *see also Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (reducing attorneys' fees award by 40% and holding that "[i]n the instance where a court has directed parties to parse out records to clearly state how much time the attorneys spent on each claim, and the parties have done so insufficiently and have referred to an unrealistic volume of hours as 'inextricably intertwined' with many claims, the court may also decrease the requested award amount"); *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing attorneys' fee request by 40% due to duplication of work, vague descriptions of some of the work performed and the necessity of the work).

Further, where counsel seeks compensation for time spent completing administrative tasks or work that should have been accomplished by a less-skilled practitioner, "[u]niform percentage cutbacks are warranted." *De La Paz v. Rubin & Rothman,* LLC, No. 11 Civ. 9625, 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013); *see Chavez*, 2016 WL 1171586, at *5 (reducing total hours by 30 % since "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate" and because "some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel"); *Barshay v. Specified Credit Assocs. I, Inc.,* No. CV 15-1044, 2016 WL 3578993, at *3 (E.D.N.Y. June 3, 2016) (reducing total hours claimed in FDCPA action by 20% in light of the duplicative nature of the work, the fact that many of the tasks could have been accomplished by "a less experienced associate," and based upon the overall lack of care taken in preparation of materials submitted to the court), *report and recommendation adopted sub nom. Barshay v. Specified Credit Assocs. 1, Inc.,* No. 15-CV-1044, 2016 WL 3582058 (E.D.N.Y. June 28, 2016).

16

## 2.     *Application to the Facts*

### a.     **Hourly Rates of Plaintiffs' Counsel**

Plaintiffs seek fees for Attorney Jekielek at a rate of $400 per hour and fees for Attorney Janis at a rate of $300 per hour.  Pls.' Mem. at 7.  Attorney Jekielek gradated from Drexel University in 2003 and Suffolk University Law School in 2006.  Declaration of Ryan Janis, attached to Plaintiffs' Motion for Attorneys' Fees and Costs ("Janis Decl.") [DE 58] ¶ 6.  He has been practicing law for eleven years and has experience representing both plaintiffs and defendants in intellectual property matters, including copyright infringement.  *Id.*  Attorney Jekielek has been recognized by Super Lawyers – Rising Star 2011-2018 as a Top Rated Entertainment and Sports Attorney.  *Id.*

While Attorney Jekielek can be considered an experienced attorney, the Court must "take into account case-specific factors to help determine the reasonableness of the hourly rate[ ]."  *Pinzon*, 2012 WL 4174725, at *5.  In considering the *Arbor Hill* and *Johnson*  factors identified above, the Court finds it appropriate to award Attorney Jekielek an hourly rate lower than the rate he seeks.  Most significantly, the Court finds that while this action may be characterized as procedurally involved with respect to motion practice, the subject matter and legal issues involved were not overly complex:  this was a single transmission Communications and Copyright Act case against a single business entity and its proprietor.  Similarly, the resources required to prosecute this case should not have been great.  Indeed, despite Defendants' attempt to seek certain discovery, this Court ruled that "defendants' requests were overly broad [and] outside the scope of permissible discovery in light of the fact that this is a single claim of an illegal transmission against a single proprietorship, and disproportional to the needs of the case," and further determined "that it would not require plaintiff to respond at all to the individual interrogatory and document request at issue."  DE 36 ¶ 3.  Accordingly, Plaintiffs were not

17

forced to expend undue resources in discovery. In the same vein, Attorney Jekielek and his firm handle many Communications Act cases for Plaintiff Joe Hand. "[A] review of the court's docket reveals that the Jekielek & Janis, LLP firm has repeatedly provided the court with submissions in matters involving Joe Hand that are substantially similar." *Joe Hand Promotions, Inc. v. Terranova*, No. 12-CV-3830 FB VVP, 2014 WL 1028943, at *9 (E.D.N.Y. Mar. 14, 2014).

Based on all of the above considerations, the Court finds $300 to be an appropriate hourly rate for Attorney Jekielek. *See Terranova*, 2014 WL 1028943, at *9 ("These considerations render excessive [Attorney Jakielek's] hourly rate of $300 . . . given the work done by the firm."). Plaintiffs also seek fees for Attorney Janis at a rate of $300 per hour. Pls.' Mem. at 7. Attorney Janis graduated from Drexel University in 2006 and Rutgers Law School in 2009. Janis Decl. ¶ 4. He states that he has significant experience in federal courts nationwide handling claims under the Copyright and Communications Act. *Id.* Taking into account his level of experience and the same factors identified above, the Court finds a rate of $200 per hour to be a reasonable hourly rate for Attorney Janis.

### b. Hours Billed by Plaintiffs' Counsel

The more contentious aspect of Plaintiffs' fee application involves the number of hours spent litigating this matter. Plaintiffs seek to recover fees for 314.1 hours spent litigating the instant case, which they claim is actually a conservative estimate. *See* Pls.' Mem. at 9. In support of this figure, Plaintiffs have provided contemporaneous billing records, broken down by attorney, in their supplemental production. *See* DE 63. According to these records, Attorney Janis billed 269.6 hours, and Attorney Jekielek billed 37.7 hours and travelled for 6.8 hours. *Id.*

The Court finds that 314.1 hours spent litigating this matter is excessive in light of the level of complexity and requirements of the case. As stated earlier, this was a single

transmission, single entity Communications and Copyright Act case. The scope of discovery was kept proportional to the needs of the case by this Court. The Court acknowledges that Defendants' counsel raised some novel and creative legal arguments at the motion to dismiss stage with respect to whether internet streaming was contemplated by the Federal Communications Act, *see Maupin*, No. 15-CV-06355, 2016 WL 6459631, at *4 ("The Defendants argue that "[Sections 553 and 605] do[ ] not prohibit the . . . receipt of the [Telecast] over the internet."), and at the summary judgment stage with respect to waiver and implied license. *See id.* at *4-*5 ("The Defendants claim that the Plaintiffs are not entitled to damages because they effectively waived their intellectual property rights in the Program by failing to act when they became aware that the Defendants were going to illegally exhibit the Program. . . . The Defendants' claimed defense may be better understood as an implied license."). Nevertheless, these were somewhat straightforward legal inquiries which Plaintiffs' counsel should have been able to address through a moderate amount of legal research – especially given the level of expertise which both counsel claim in this area of the law.

The Court also observes the recent decision of District Judge Chen on a motion for entry of default judgment filed by the same Plaintiff Joe Hand and counsel as in the instant matter. In *Joe Hand Promotions, Inc. v. Khan*, No. 17-CV-03744, 2018 WL 3973008 (E.D.N.Y. Aug. 20, 2018), Judge Chen made the following observations:

> [A] review of the Court's docket "reveals that the Jekielek & Janis, LLP firm has repeatedly provided the court with submissions in matters involving Joe Hand that are substantially similar." *Terranova*, 2014 WL 1028943, at *9 (citing *Kingvision Pay–Per–View, Ltd., v. Soluna Bar & Lounge, Inc.,* 06-CV-5066 (ILG) (MDG), 2008 WL 2673340, at *6–7 (E.D.N.Y. May 27, 2008) (counsel's charged hourly rate of $250 deemed excessive); *Joe Hand Promotions, Inc. v. 143-0894th Corp.,* No. 07-CV-2339 (RRM) (RLM), 2008 WL 3243886, at *5 (E.D.N.Y. Aug. 7, 2008) (reducing counsel's fees and chastising counsel for his submissions)). Indeed, in prior cases, courts in this district have

19

found that "[t]hese considerations render excessive [Plaintiff's] counsel's hourly rate of $300"; *Terranova*, 2014 WL 1028943, at *9; here, Plaintiff's counsel is seeking $400 per hour.

Given the minimal amount of time and labor required, the lack of complexity and repetitive "boilerplate" nature of litigating a default judgment in a Cable Act case (which Mr. Jekielek and his firm have done in numerous similar Cable Act cases), the excess hours billed, the relatively low default statutory damages award amount in this case ($1,313), and the fee awards granted in similar Cable Act default judgment cases litigated by Mr. Jekielek, the Court reduces the remaining attorney's fees of $3,080 (7.7 hours at $400/hour) by 40% to a total of $1,848. *See Terranova*, 2014 WL 1028943, at *9 (reducing Mr. Jekielek's fees by 66%, given "the absence of contemporaneous billing records, as well as the excessiveness of the hours and the unreasonableness of the rates"); *Zyller*, 2014 WL 59979, at *8 (same). The Court thus finds that an award of $1,848 would adequately and reasonably compensate Mr. Jekielek for the time that he spent on this case.

*Id.*, at *3-*4. Although *Khan* involved Joe Hand's motion for entry of default judgment, the Court finds the analysis provided by Judge Chen applicable to the instant matter, both with respect to counsels' hourly rates, as noted above, and with respect to the number of hours billed. In light of the asserted level of expertise of Plaintiffs' counsel and legal issues involved in a Communications Act case, even one defended vigorously, the Court finds the hours billed by counsel in the instant matter to be excessive. The Court recommends, as noted below, that an appropriate adjustment of the fee award be made in light of this finding.

### c.    What a Reasonable Client Would Expect to Pay

The Court is mindful of the Second Circuit's holding in *Arbor Hill* that "in calculating the reasonable hourly rate for particular legal services, a district court should consider all relevant circumstances in concluding what a reasonable client would expect to pay." *Arbor Hill*, 522 F.3d at 184 n.2. "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174 (internal quotation marks omitted);

20

*Simmonds v. New York City Dep't of Corr.*, No. 06 CIV. 5298, 2008 WL 4303474, at *3 (S.D.N.Y. Sept. 16, 2008) ("The gravamen of a reasonable rate remains the market rate that a reasonable client would expect to pay given 'the nature of the representation and type of work involved in a case.'") (quoting *Arbor Hill,* 522 F.3d at 184 n.2.). It seems unlikely that a reasonable client would be willing to pay close to six figures in attorneys' fees to prosecute a single transmission Communications and Copyright Act case, which, as Judge Spatt observed, "was not a particularly egregious case." *Maupin*, 2018 WL 2417840, at *9. Indeed, Plaintiffs' counsel, who are well-versed in this type of litigation, should have been aware that under either of the two approaches courts in this Circuit use to award fees in unauthorized transmission cases, namely, (i) multiply the number of patrons present at the establishment by a dollar amount, or (ii) award a flat amount, they were unlikely to walk away with the amount of damages they were seeking.[4]

### B.    Summary of Fee Award

The Court respectfully recommends to Judge Spatt that an award of attorneys' fees be made to Plaintiffs at a rate of $300 per hour for Attorney Jekielek and $200 per hour for Attorney Janis. Based on these rates and the hours billed as submitted in counsels' supporting documents, and before any adjustments are taken into account, Plaintiffs would be entitled to a fee award of $11,310 (Attorney Jekielek at $300 per hour x 37.7 hours billed) + $1,020 (Attorney Jekielek at $150 per hour x 6.8 hours of travel) + $53,920 (Attorney Janis at $200 per hour x 269.6 hours billed) = $66,250.00. However, as the Court discussed at length, there are two related reasons why this figure should be adjusted downward: the hours billed by counsel in this single

---

[4]    Indeed, the Court's independent research was unable to find any unauthorized transmission case in which either damages or fees awarded came anywhere close to the damages and fees sought by Plaintiffs here.

transmission Communications and Copyright Act case were excessive, and the fees sought are inconsistent with what a reasonable client would be willing to pay given the nature of the case. Therefore, this Court respectfully recommends to Judge Spatt that Plaintiffs' provisional fee award of $66,250 be reduced by 30%, and Plaintiffs be awarded a total award for attorneys' fees of **$46,375.00.**

As for costs, Plaintiffs seek a total award of $1,095.98, which includes the $400 filing fee.  Janis Decl. ¶ 10.  Although Plaintiffs include documentation for all but one of the costs that comprise this total, it does not appear that Plaintiffs explain anywhere exactly what costs the documentation they have provided represents.  From what the Court can tell, the documentation appears to represent $142.50 for service of the Summons and Complaint, *id*., Ex. C at 1-2; $126.36 for a copy of a transcript of the March 22, 2017 discovery status conference, *id*., Ex. C. at 3; $213.56 in travel expenses from an unknown location[5] to the Central Islip Courthouse on October 26, 2017, and $213.56 from the Central Islip Courthouse to an unknown location on the same day.   It is unclear exactly what mode of transportation these last two invoices represent. *Id*. Ex. C at 4-5.  These cost figures together total $695.98.  Plaintiffs also seek the $400 filing fee.  Although they do not provide documentation in support of this reimbursement, "a court may take judicial notice of the fact that the fee was paid by virtue of entries in the docket."  *Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017).  Therefore, the total amount of damages sought is $1,095.98.

In the Court's view, Plaintiffs' award of costs should exclude the roundtrip travel expenses totaling $427.12 ($213.56 x 2).  *See Congregation Rabbinical Coll. of Tartikov, Inc. v.*

---

[5]  This location is redacted in the document.

*Vill. of Pomona*, 188 F. Supp. 3d 333, 345 (S.D.N.Y. 2016) ("Fee awards include reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.  While [e]xpenditures for photocopies, postage, binding, filing, and travel are routinely recoverable, "[t]ravel costs may be denied where a party chooses out-of-district attorneys.") (quoting *Pall Corp. v. 3M Purification Inc.*, No. 03-CV-92, 2012 WL 1979297, at *8 (E.D.N.Y. June 1, 2012)) (quotations and citations omitted); " *Dzugas–Smith v. Southold Union Free Sch. Dist.*, No. 07-CV-3760, 2010 WL 3852003, at *3 ("[T]he Second Circuit has instructed that defendants should not be penalized for a plaintiff's choice of out-of-district counsel, unless 'the case required special expertise beyond the competence of forum district law firms.'") (quoting *Simmons*, 575 F.3d at 175).

Accordingly, this Court respectfully recommends to Judge Spatt that Plaintiffs be awarded costs in the amount of **$668.86.**

### C.    Sanctions Against Defendants and Defendants' Counsel

Plaintiffs also ask the Court to find Defendants' counsel jointly and severally liable for one half of the Court's award of attorneys' fees and costs pursuant to 28 U.S.C. § 1927 as well as the Court's inherent authority.  Pls.' Mem. at 10-11.  Plaintiffs contend that, in light of his purported admissions as to liability, the following acts indicate bad faith on the part of Defendants' counsel sufficient to warrant holding him partially liable:  (1) opposing Plaintiffs' motion for default judgment without moving to vacate entry and without requesting that Plaintiffs' counsel stipulate; (2) seeking Rule 12(b)(6) dismissal; (3) engaging in harassing class action-type litigation in a case without a class; (4) serving harassing, overly broad, and irrelevant discovery requests; (5) engaging in meritless motion practice, including a motion to dismiss, discovery motions, and a motion for summary judgment; and (6) refusing to stipulate to liability. *Id*. at 12.

Under 28 U.S.C. § 1927, any attorney in federal court who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Bad faith is the touchstone of an award under this statute." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). Accordingly, the Second Circuit has held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (citation omitted); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'") (citation omitted); *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982) ("To justify the imposition of excess costs of litigation upon an attorney [under § 1927] his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.").

Similarly, within the exercise of a court's inherent power to supervise and control its own proceedings, a court may award attorneys' fees where there is "both 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes,' and 'a high degree of specificity in the factual findings of [the] lower courts.'" *Oliveri*, 803 F.2d at 1272 (quoting *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986)). The standard a court uses in determining whether to impose sanctions under its inherent authority is substantively similar to the standard a court uses in determining whether to impose sanctions under § 1927. *See Oliveri*, 803 F.2d at 1273 ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent powers.") (citation omitted).

24

The Court does not find bad faith on the part of Defendants' counsel.  Indeed, nothing in the record of the conduct of Defendants' counsel approximates being "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Colucci*, 533 F. Supp. at 1014.  Although counsel at times demonstrated zealous advocacy, the Court does not find that he has crossed the line into bad faith.  The Court is satisfied from the record and the arguments put forward by Defendants' counsel that each act of challenged conduct had a good faith litigation purpose.  The Court therefore respectfully recommends to Judge Spatt that Plaintiffs' motion for sanctions against Defendants and Defendants' counsel be DENIED.

## IV.   CONCLUSION

For the foregoing reasons, this Court recommends to Judge Spatt that Plaintiffs' motion for attorneys' fees and costs be GRANTED and Plaintiffs be awarded (1) **$46,375.00** in attorneys' fees and (2) **$668.86** in costs.  The Court further recommends to Judge Spatt that Plaintiffs' motion for sanctions against Defendants and Defendants' counsel be DENIED.

## V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Hon. Arthur D. Spatt, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997),

*cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated:  Central Islip, New York
        March 6, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge